# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLOTTE D. DOUGLAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-12-213-JHP-KEW |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Charlotte D. Douglas (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. <u>Casias v. Secretary of Health & Human Servs.</u>, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951); *see also*, <u>Casias</u>, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on July 31, 1961 and was 49 years old at the time of the ALJ's decision. Claimant completed her high school education and two years of college. Claimant has worked in the past as a nurse's aide, cashier/checker/janitor, and deliverer of car and truck parts. Claimant alleges an inability to work beginning July 31, 2006 due to limitations resulting from irritable bowel syndrome, depression, anxiety, heart problems, incontinence, COPD, chronic

3

fatigue, panic attacks with agoraphobia, and pain in her left shoulder, left hip, neck, and chest.

## Procedural History

On August 7, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On September 29, 2010, an administrative hearing was held by video before ALJ Osly F. Deramus. On December 17, 2010, the ALJ issued an unfavorable decision on Claimant's applications. The Appeals Council denied review of the ALJ's decision on March 28, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform a range of sedentary work with limitations.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to

include all of her severe impairments at step two; (2) engaged in an improper credibility analysis; (3) improperly weighting the medical opinion evidence; (4) arriving at an unsupported RFC; and (5) making inadequate findings at step five.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of irritable bowel syndrome, cervical spondylosis, major depressive disorder, generalized anxiety disorder, panic disorder, and mild degenerative disc disease of the lumbar spine. (Tr. 62). He also found Claimant retained the RFC to perform sedentary work. (Tr. 66). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of tube room cashier, which the vocational expert classified as semi-skilled and sedentary and microfilm document preparer, which he classified as unskilled and sedentary. The vocational expert testified that both jobs existed in sufficient numbers in the national and regional economies. (Tr. 75).

Claimant contends the ALJ failed to include the conditions of costochondritis and COPD as severe impairments at step two. Claimant refers to a single record from April 19, 2007 in which she was assessed with costrochondritis and COPD as a result of Claimant stating she was having problems with shortness of breath. (Tr.

5

396).

At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

The burden of showing a severe impairment is "de minimis," yet the presence of a medical condition alone is not sufficient at step two. Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Soc. Sec. R. 85-28. A claimant must demonstrate he has a severe impairment that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D).

A claimant's testimony alone is insufficient to establish a severe impairment. The requirements clearly provide:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.
>
> 42 U.S.C.A. § 423(d)(5)(A).

The functional limitations must be marked and severe that can be expected to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(1)(C)(i); 20 C.F.R. § 416.927(a)(1).

Nothing in the record supports a finding that Claimant's costochondritis and COPD are of sufficient severity or duration to constitute a severe impairment. Indeed, after this single diagnosis, Claimant's shortness of breath was attributable to her irritable bowel syndrome which cause her abdomen to become distended and tender which, in turn, caused Claimant to experience shortness of breath. (Tr. 376, 378). The ALJ did not err in failing to include these conditions at step two.

**Credibility Determination**

Claimant also asserts the ALJ improperly rejected her statements based upon reduced credibility. Claimant testified that she has to urinate 15-16 times per day, experiences diarrhea three days per week when she goes to the bathroom 10-11 times per day. Tr. 91-92). Claimant has a distended stomach almost all of the time. (Tr. 93). She sleeps about four hours before the pain awakens her. The rest of the night she sits up. (Tr. 94). She experiences anxiety attacks which bring about shortness of breath. Walking also brings about shortness of breath. (Tr. 95). Claimant uses a cane to get around on doctor's orders. (Tr. 96). She sits in a recliner about 8 hours in a day. Claimant's husband does the housework while Claimant spends about 30 minutes a night fixing dinner. (Tr. 97). Her husband also does the grocery shopping and helps Claimant with her personal needs including getting out of the bath tub and dressing. She does not have a social life, have any hobbies, or attend church regularly. (Tr. 98). Claimant experiences chest pain from anxiety. (Tr. 98-99).

Claimant testified she has trouble remembering things and concentrating, does not like to be around strangers, has feelings of being useless and not in control. (Tr. 99-100). Claimant states she has had suicidal thoughts and has attempted suicide. (Tr. 101). Claimant testified she can sit in a straight chair for about 15-20 minutes, can stand for five minutes, could not lift a gallon of milk

8

or five pound bag of sugar. To do so causes Claimant to swell and have pain in her back. (Tr. 102-03). She cannot bend over, squat, has difficulty climbing stairs, can kneel but not crawl without pain, and experiences numbness in her hands and drops things. (Tr. 103-04).

As is common, the ALJ employs the boilerplate language indicating he reached an RFC before considering Claimant's testimony as part of the evidence to arrive at an RFC rather than first evaluating the testimony then formulating an RFC. Additionally, the ALJ engages in rank speculation in an attempt to discount Claimant's credibility. He states that "[t]here is evidence that the claimant may have stopped working for reasons not related to the allegedly disabling impairments", noting a comment in a medical record that Claimant watches her grandkids without pay. (Tr. 68). The ALJ gleans from this information that she must frequently watch them and to do so is both physically and emotionally demanding. (Tr. 68-69). He finds this to be inconsistent with her claimed need to use the bathroom. The record contains equally persuasive information that she quit her job because of her need for frequent bathroom visits. (Tr. 381).

The ALJ is also critical for Claimant to have gone on a vacation and accuses Claimant of attempting to generate evidence by visiting a treating physician just prior to the hearing. This finding is inconsistent with the evidence that Claimant had

9

complained of back pain with walking in visits to her physician well prior to her last visit before the hearing. (Tr. 600).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

On remand, the ALJ shall reconsider his findings on credibility steering clear of speculation and self-manifested beliefs of

motivation. The ALJ shall instead fulfill his duty to affirmatively link his findings to the medical record.

**Evaluation of Opinion Evidence**

Claimant takes issue with the ALJ giving the opinion of Dr. Barbara Felkins dated October 14, 2010 "great weight." (Tr. 72). Claimant first challenges Dr. Felkins' credentials and qualifications to render an opinion. The ALJ sent a letter to counsel on November 4, 2010 forwarding Dr. Felkins' report and soliciting written comments and, if necessary, a request for a supplemental hearing. Claimant's counsel apparently offered neither. As a result, Claimant's challenge to Dr. Felkins' qualifications as an medical expert is simply too late.

In her report, Dr. Felkins sets forth the list of documents she reviewed prior to authoring her findings. (Tr. 682). In her Medical Source Statement, Dr. Felkins found Claimant to be markedly limited in the areas of understanding and remembering complex instructions, carrying out complex instructions, and the ability to make judgments on complex work-related decisions. (Tr. 685). She also found Claimant was moderately limited in the areas of interacting appropriately with the public, supervisors, and co-workers as well as responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 686). She then stated without a specific explanation that she "agree[s] with state's assessment." (Tr. 689).

The ALJ described Dr. Felkins' opinion together with the opinions of the state agency physicians. (Tr. 72). He concluded all of the opinions were entitled to "great weight" as being fully supported by and consistent with the medical record as a whole. Id. The problem with the ALJ's analysis is he does not explain how these opinions are consistent with the medical record. Other courts have experienced similar problems in evaluating opinions in light of these rote statements.

> The court finds that such a summary conclusion that the assessments were or were not consistent with the overall record is beyond meaningful judicial review. In the absence of ALJ findings supported by specific weighing of the evidence, the court cannot assess whether relevant evidence supports the ALJ's conclusion that an assessment was or was not consistent with the overall record. *See Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996). Boilerplate, conclusory statements must be linked to evidence in the record. *See Hardman v. Barnhart,* 362 F.3d 676, 679 (10th Cir. 2004). Conclusory statements do not provide justification for rejecting a medical source opinion; the Commissioner must give specific, legitimate reasons for rejecting the medical source opinion. *Reyes v. Bowen,* 845 F.2d 242, 245 (10th Cir. 1988). Other than making conclusory statements, the ALJ provided no explanation for why two medical assessments were found to be consistent with the evidence, while the other medical assessment was not consistent with the evidence. Nothing in the ALJ's decision explains the basis for these conclusory statements by the ALJ, except for the ALJ's statement that the medical source opinions by Dr. Winkler and Dr. Rubini were similar (R. at 852). However, as set forth previously, there were some differences in the two opinions, and the ALJ failed to explain why some of the limitations in Dr. Rubini's opinion were not included in the ALJ's RFC findings. Therefore, this case shall be remanded in order for the ALJ to explain why the evidence is consistent with certain medical opinions, but not others.
>
> Cann v. Colvin, 2013 WL 4549259, 8-9 (D.Kan.).

12

Similarly, the ALJ simply stated the opinions were consistent with other evidence in the record without explanation. The fact the opinions may be consistent with one another when some are based merely upon a review of the others' opinions is not surprising or helpful. On remand, the ALJ shall explain how the state agency physician's opinions and Dr. Felkins' opinion are consistent with the medical record.

Claimant also contends that ALJ improperly rejected the opinion of Dr. James Howard, Claimant's psychiatrist. It appears the ALJ challenges Dr. Howard's opinion initially because he was not Claimant's treating psychiatrist. (Tr. 71). The record would indicate otherwise. (Tr. 570). On remand, the ALJ shall re-evaluate Dr. Howard's opinion as a treating physician under the appropriate rubric contained in Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003).

### RFC Determination

Based upon the myriad of problems with the ALJ's consideration of the evidence, he shall also re-evaluate his RFC findings on remand.

### Step Five Analysis

Claimant contends the ALJ failed to include all of her limitation in his questioning of the vocational expert. Again, since the ALJ must re-evaluate his RFC findings, he shall also

13

reformulate his questioning of the vocational expert on remand.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 13th day of September, 2013.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE